# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

DANIEL BRYAN CARLSON,

    Plaintiff,

v.                                      Case No. 8:17-cv-2891-T-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his application for a period of disability and disability insurance benefits ("DIB"). A hearing was held before the assigned Administrative Law Judge ("ALJ") on May 5, 2016, at which Plaintiff was represented by counsel. (Tr. 45-112.) The ALJ found Plaintiff not disabled from October 29, 2014, the alleged disability onset date, through October 25, 2016, the date of the decision.[2] (Tr. 19-39.)

Plaintiff is appealing the Commissioner's decision that he was not disabled from October 29, 2014 through October 25, 2016. Plaintiff has exhausted his

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 18.)

[2] Plaintiff had to establish disability on or before December 31, 2019, his date last insured, in order to be entitled to a period of disability and DIB. (Tr. 24.)

available administrative remedies and the case is properly before the Court.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons stated herein, the Commissioner's decision is **AFFIRMED**.

**I.     Standard**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

Plaintiff raises two issues on appeal. First, he argues that the ALJ erred when he failed to "review or give a reason for discounting the reports of" David Donovan, Ph.D., Plaintiff's treating psychotherapist. (Doc. 22 at 1, 6.) Second, Plaintiff argues that the ALJ erred when he failed to review or give a reason for discounting "ALL of the findings from Dr. Daniel J. Geha," Plaintiff's treating physician. (*Id.* at 1 (emphasis in the original).) Defendant responds that substantial evidence supports the ALJ's decision that Plaintiff was not disabled and counters that the ALJ properly weighed the medical evidence and the medical opinions of Dr. Donovan and Dr. Geha. (Doc. 25 at 4.) The Court agrees with the Defendant.

### A. Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making a disability determination. *See* 20 C.F.R. § 404.1520(a)(3). With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

"'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own

medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency of the medical opinion with the record as a whole, (5) specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6). "However, the ALJ is not required to explicitly address each of those factors. Rather, the ALJ must provide 'good cause' for rejecting a treating physician's medical opinions." *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. June 22, 2011) (per curiam).

Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam), 20 C.F.R. § 404.1527(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, 2008 WL 649244, *3 (M.D. Fla. Mar. 10, 2008). Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

"The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. May 2, 2008) (per curiam); *see also* SSR 96-6p (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining sources). While the ALJ is not bound by the findings of non-examining physicians, the ALJ may not ignore these opinions and must explain the weight given to them in his decision. SSR 96-6p.

### B. The ALJ's Decision

At step two of the five-step sequential evaluation process, the ALJ found that from the alleged disability onset date of October 29, 2014 through the date of the decision, Plaintiff had "the following severe impairments: human immunodeficiency virus (HIV); major depressive disorder, improving over time; anxiety disorder, NOS, improving over time; and diabetes mellitus, type 2." (Tr. 24.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (Tr. 25.) The ALJ then found that, through the date of the decision, Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of medium work, as follows:

> He can lift, carry, push and pull up to 50 pounds occasionally and 25 pounds frequently; has no limitations on sitting, standing, or walking; is able to understand, remember and carry out simple and detailed instructions that can be learned in six months or less; should avoid jobs with fast pace and/or strict production standards; and is able to tolerate routine work stress, but not high stress.

(Tr. 27.) In making these finding, the ALJ considered Plaintiff's statements, testimony, the objective medical evidence, as well as the opinions of treating, examining, and non-examining sources. (Tr. 25-37.) The ALJ also found that, through the date of the decision, Plaintiff was unable to perform his past relevant work, but that, considering his "age, education, work experience" and his RFC, there were jobs "in significant numbers in the national economy that" he could perform. (Tr. 37-39.)

In determining that Plaintiff's level of impairments did not meet the requisite degree of severity under 20 CFR Part 404, the ALJ accorded great weight to the testimony of Thomas H. England, Ph.D., the non-examining impartial medical expert who testified at Plaintiff's hearing before the ALJ. (Tr. 25.) With respect to Plaintiff's mental impairments, the ALJ pointed to Dr. England's opinion that although Plaintiff had "diagnoses related to both major depressive disorder and anxiety during the relevant period," the evidence also showed improvement in the Plaintiff's level of depression and anxiety with treatment and medication.[3] (Tr. 25-26 (citing to Tr. 534, 554, 528, 394-396, 391-

---

[3] The ALJ noted that Dr. England relied on the following evidence in reaching this conclusion:

6

398, 515-534, 535-560).) The ALJ generally agreed with the medical expert's findings that "the evidence was insufficient to substantiate the presence of an impairment or combination thereof that meets or medically equals the level of severity outlined in the Medical Listing" and that "the evidence reflects [Plaintiff] is no more than mildly limited in his ability to perform activities of daily living; no more than mildly to moderately limited in his ability to maintain social functioning; and no more than moderately limited in his ability to sustain concentration, persistence, or pace." (Tr. 26.) The ALJ noted that the medical expert further found that "there is no evidence [Plaintiff] has experienced any episodes of decompensation which have been of extended duration during the relevant period." (*Id.*) The ALJ found that "[t]he preponderance of the objective medical evidence" supported Dr. England's assessment of the severity of Plaintiff's impairments. (*Id.*) The ALJ concluded that, based on the medical evidence, Plaintiff had no more than a mild restriction in activities of daily living, no more

---

> Dr. England, specifically, pointed to mental status examination findings on October 10, 2014 that reference [Plaintiff] as being "mildly depressed" (Exhibit 9F, page 20); the February 19, 2015 report by [Plaintiff's] treating physician, Dr. Geha, that his anxiety was "better" (Exhibit 10F, page 20); reports of a "mildly depressed mood [on] June [1]6[,] 2015 by [Plaintiff's] treating psychiatrist ([Exhibit 9F] at page 14); the March 2016 consultative examination report, noting that Plaintiff told the examiner he was working out regularly and having lunch with friends (Exhibit 5F); and essentially reports by Plaintiff throughout the period in question were that he was either hoping for different employment, or he was trying to adjust his IRA, so that he could buy a franchise or invest in a business (Exhibits 5F, 9F, 10F, and the claimant's testimony at the hearing).

(Tr. 26.)

than mild difficulties in social functioning,[4] no more than moderate difficulties with regard to concentration, persistence or pace, and that there was no evidence of episodes of decompensation of extended duration.[5]  (Tr. 26-27.)

In analyzing the objective medical evidence with respect to Plaintiff's RFC determination, the ALJ acknowledged "medical evidence in the file that does reflect a history of residuals associated with HIV infection, depression and anxiety, and treatment for diabetes mellitus."  (Tr. 33.)  However, the ALJ also found "that the same evidence reflects significant improvement in the claimant's condition for quite some time with regular treatment and compliant medication management."  (Tr. 33.)  The ALJ specifically noted that:

> [C]ontradicting the claimant's testimony at the hearing, the medical evidence reflects the following: the report on November 15, 2013 was that the claimant has no known complications from diabetes (Exhibit 2F, page 18); the report on March 5, 2014 was that the claimant essentially has no complications from diabetes, and also

---

[4] The ALJ disagreed with the medical expert and found that Plaintiff was "no more than mildly limited in his ability to maintain social functioning."  (Tr. 26.)

[5] In assessing Plaintiff's limitations in activities of daily living and social functioning, the ALJ also pointed to Plaintiff's psychological evaluation by Dr. Alan R. Israel, a State agency examining psychologist, noting that:
> Unlike his testimony at the hearing held on May 5, 2016, during the March 15, 2016 consultative evaluation by [Dr. Israel], regarding his daily activities and abilities, the [Plaintiff] said he spends his days doing some volunteer work, taking his dog for a walk, playing puzzle games, meeting with three or four close friends for dinner, and working out in the gym three times a week and seeing his personal trainer (Exhibit 5F, page 4).  The [Plaintiff] also said he was trying to get his IRA's [sic] to the point where he can help himself financially[,] possibly through buying a franchise. The [Plaintiff] acknowledged a history of HIV infection and diabetes mellitus, and also said he felt somewhat depressed, "but not to the point where it was in the past[.]"

(Tr. 26, 391-96.)

shows the claimant's last eye examination was in February 2014 "without evidence of retinopathy" (Exhibit 2F, page 15); the report by the claimant to treating psychiatrist Dr. Zaderenko in June 2014 was that his anxiety "is not debilitating but it's still there" (Exhibit 1F, page 10); the October 10, 2014 report of Dr. Zaderenko was that the claimant was not severely depressed, and was tolerating medications well (Exhibit 9F, page 20); the report by the claimant on November 12, 2014 was that he was "hoping to get a new position at Center in the next couple of months" (Exhibit 1F, page 8); on February 9, 2015, the claimant described only being "intermittently" depressed and anxious, and also said he was tolerating psychiatric medications well (Exhibit 9F, page 15); the February 19, 2015 report of the claimant's treating physician, Dr. Geha, was that his energy levels were improved from last visit and his anxiety seemed better controlled (Exhibit 10F, page 20); the report by Dr. Zaderenko on April 3, 2015 was that both anxiety and depression had decreased (Exhibit 1F, page 5); the report on April 16, 2015 was that the claimant was on hGH and noted improvement in his energy levels, and he was feeling better overall (Exhibit 10F, page 15); and the report on May 11, 2015 was that both depression and anxiety seemed reasonably controlled (Exhibit 10F, page 12).

Furthermore, the report on July 17, 2015 was that claimant's "<u>viral load is undetectable</u>" (Exhibit 7F, page 1); on August 18, 2015, the claimant told examiners his energy level is "clearly better than it was 6 months ago"; that his last CD4 count was acceptable; and that he was physically active "near[ly] daily" (Exhibit 8F, page 3); and on December 16, 2015, the claimant told examiners that he was "looking at the possibility of being part of a business, a hair salon for kids" (Exhibit 9F, page 9). This same report indicates the claimant also said he was "hoping to go back to a sales position after January, as I enjoy [that] more," and adds that, relative to the claimant's diabetes, he "is not on insulin anymore[.]"

(Tr. 33-34 (emphasis in the original).)

In finding that the evidence showed Plaintiff's conditions had improved over time, the ALJ also pointed to a February 1, 2016 report by Dr. Geha stating that Plaintiff was "overall doing much better; that he was working out on a daily basis; and that his mental status and concentration levels [had] stabilized." (Tr.

9

34 (internal quotations omitted); Tr. 540.) Further, the ALJ also noted that on February 4, 2016, during a clinic visit with Dr. Sokol, Plaintiff related that "he anticipat[ed] initiating a new franchise business[,]" "acknowledge[d] resolution of the depression he had last year[,]" stated that he was exercising on a regular basis, and that "his HIV infection remain[ed] controlled." (*Id.* (internal quotations omitted); Tr. 575-76.)

The ALJ also addressed the testimony of Dr. England, again noting that Dr. England acknowledged Plaintiff had a history of major depressive disorder and anxiety, but also recognized that Plaintiff's depression and anxiety had improved with medication and treatment. (Tr. 34.) The ALJ noted that Dr. England referred to the consultative psychological examination by Dr. Israel in assessing Plaintiff's complaints of fatigue, stating that "these were hard to quantify, given the fact that, among other things, during the March 2016 consultative psychological evaluation by Dr. Israel (just two months prior to the hearing), the claimant characterized significant activities, in terms of working out, meeting others for lunch or dinner, etc. (Exhibit 5F)." (Tr. 35.) In terms of Plaintiff's complaints regarding fatigue and decreased energy, the ALJ noted that the medical expert cited to "evidence reflecting improvement in energy, as well as in mood and motivation with hormone replacement therapy, decreasing the need for sertraline." (*Id.*) The ALJ concluded that "[g]iven the evidence . . . the [Plaintiff's] symptoms and complaints are not supported by objective findings." (*Id.*) In sum, the ALJ concluded that his RFC determination was "supported by

10

the longitudinal record, and there is no medical evidence in the file warranting any greater restrictions." (Tr. 36.)

### C. Analysis

First, Plaintiff argues that the ALJ failed to consider Dr. Donovan's February 26, 2016 report. (Tr. 561-68.) According to Plaintiff, "Dr. Donovan[] opined that the [Plaintiff] has [] generalized persistent anxiety accompanied by motor tension; autonomic hyperactivity; apprehensive expectation, vigilance and scanning; and that [Plaintiff] has recurrent and intrusive recollections of a traumatic experience, which are a source of MARKED distress." (Doc. 22 at 4 (emphasis in the original); Tr. 561.) Plaintiff also cited Dr. Donovan's opinion that Plaintiff suffered from "a current depressive syndrome characterized by the following: anhedonia or pervasive loss of interest in all activities; appetite disturbance with change in weight; sleep disturbance; psychomotor agitation and retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking." (Doc. 22 at 4-5; Tr. 563.) Plaintiff argues that the ALJ failed to consider, or explain why he had rejected, Dr. Donovan's conclusions contained in his report, including a Mental Residual Functional Capacity Assessment in which Dr. Donovan found Plaintiff to have "marked" and "moderate" limitations in various areas. (Doc. 22 at 4-6; Tr. 566-68.)

Plaintiff concluded that the ALJ had failed to "even reference the reports of Dr. David Donovan, which clearly indicated, that the Claimant had **MARKED** restrictions of activities of daily living; difficulties in maintaining social functioning;

11

and deficiencies in concentration, persistence of pace; but also that the Claimant had **REPEATED EPISODES OF DECOMPENSATION** each of extended duration of three episodes within one year, or an average of once every four months, each lasting at least two weeks," (Doc. 22 at 10 (emphasis in the original); Tr. 562-63).

The Court is unpersuaded by Plaintiff's arguments. As to the first issue, the Court agrees with Defendant that the ALJ did not err in giving little weight to some of Dr. Donovan's medical opinions. As the ALJ pointed out:

> The undersigned has considered the opinion of David Donovan, Ph.D., in the April 29, 2015 letter at Exhibit 4F, page 3. This opinion is assigned little weight. ***The opinion of this provider that "future employment is not advised" is vague, conclusory, and inconsistent with the objective medical record in its entirety***. Additionally, as previously stated, an individual's residual functional capacity and whether an individual is "disabled" under the Act are not medical issues regarding the nature and severity of an individual's impairments but are administrative findings that are dispositive of a case. The regulations provide that the final responsibility for deciding these issues is reserved for the Commissioner. Treating source opinions on issues reserved for the Commissioner are never entitled to controlling weight or special significance (Social Security Ruling 96-5p). ***The overall February 26, 2016 opinion of Dr. Donovan is also assigned little weight for the same reasons*** (Exhibit 11F). However, the undersigned does note that, consistent with the indicated residual functional capacity, Dr. Donovan does acknowledge the claimant would have no difficulty with some simple tasks or responding to ordinary supervision.

(Tr. 36 (emphasis added).)

To the extent Dr. Donovan opined on April 29, 2015 that "[f]uture employment is not advised due to [Plaintiff's] ongoing mental impairments[,]

including the ability to understand, remember, sustain concentration, and make adaptations in the workplace" (Tr. 387), this was an opinion on an issue reserved for the Commissioner, and, thus, the ALJ was not required to accord this opinion "any special significance."[6] 20 C.F.R § 404.1527(d); SSR 96-5p (rescinded by Federal Register Notice Vol. 82, No. 57, pg. 15263, effective Mar. 27, 2017[7]).

Furthermore, the ALJ stated that the he had considered Dr. Donovan's medical opinions, *including* the February 26, 2016 report (Tr. 561-568), but had given little weight to these opinions because they were "vague, conclusory, and inconsistent with the objective medical record in its entirety."[8] (Tr. 36.) However, the ALJ acknowledged that some of Dr. Donovan's opinions in the February 26, 2016 report were consistent with the RFC where Dr. Donovan had concluded that Plaintiff "would have no difficulty with some simple tasks or responding to ordinary supervision." (*Id.*) As the ALJ stated, Dr. Donovan's opinions were inconsistent with the overall medical evidence, which showed, *inter alia*, that Plaintiff's impairments had improved with treatment and medication. (*See, e.g.*, Tr. 509 (noting "greater than or equal to 50% improve[ment]" in Plaintiff's fatigue

---

[6] In that same letter, dated April 29, 2015, Dr. Donovan also stated that he had been treating the Plaintiff since December 2014 and that Plaintiff "showed symptoms of extreme depression and anxiety when he was first seen and reported suicidal thoughts that have **markedly improved**." (Tr. 387 (emphasis added).)

[7] The ALJ issued his decision on October 25, 2016. (Tr. 19.)

[8] The report containing these assertions was a questionnaire-type form filled out by Dr. Donovan, which lacked any comments or explanations to substantiate his conclusory opinions. (Tr. 561-568.)

13

and depression on April 24, 2015); Tr. 540, 543, 546, 549 (noting improvement).) Accordingly, the undersigned finds that the ALJ had good cause for according little weight to these opinions and the ALJ's decision is supported by the objective medical evidence in the record. *See Phillips*, 357 F.3d at 1240-41.

Second, Plaintiff argues that, while the ALJ relied on "some of the evidence gathered from Dr. Geha for HIV infection" showing improvement or resolution of Plaintiff's symptoms, the ALJ erred by failing to consider Dr. Geha's February 1, 2016 report. (Doc. 22 at 7.) Plaintiff claims that in the report, Dr. Geha opined that he "has repeated manifestations of HIV infection resulting in significant, documented symptoms or signs, and [] limitations of activities in daily living; limitations [in] completing tasks in a timely manner due to deficiencies in concentration, persistence or pace [], and that it is Dr. Geha's opinion that the claimant 'cannot engage in full-time work activity since last year.'" (*Id.* (emphasis omitted).) Plaintiff also argues that the ALJ erred by allegedly failing consider Plaintiff's complaints of fatigue, diarrhea and incontinence, as well as problems with memory and concentration. (*Id.* at 7-8.) Plaintiff contends that "the [ALJ] should have reviewed all of the evidence of Dr. Geha, including that the [Plaintiff] has not been able to engage in full-time work activities since February 1, 2015, or needs to give reasons for not accepting or discounting these opinions." (*Id.* at 10 (emphasis omitted).)

The Court does not find any reversible error as to the weight accorded to Dr. Geha's opinions by the ALJ. As the ALJ explained:

> The undersigned has considered the December 8, 2014, February 23, 2015, February 1, 2016 and February 22, 2016 opinions of Dr. Geha, the claimant's treating physician, with respect to his assessment of the claimant's impairments, specifically HIV infection, and its remaining limitations on his functional abilities, at Exhibits 6F, pages 78-79 and 81-84, and 10F. In these same Exhibits, this treating source opines, "it would be difficult for him (the claimant) to return to work" or that he "cannot engage in full-time work activity." Again, while considered, this opinion is assigned little weight. ***The opinion is inconsistent with the objective medical record in its entirety, including this physician's own clinic notes.*** The opinion appears based upon the claimant's subjective complaints rather than actual objective medical findings and is assigned weight accordingly. Furthermore, an individual's residual functional capacity and whether an individual is "disabled" under the Act are not medical issues regarding the nature and severity of an individual's impairments but are administrative findings that are dispositive of a case. The regulations provide that the final responsibility for deciding these issues is reserved to the Commissioner. Treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. ***However, the opinions have not been ignored*** (SSR 96-5p).

(Tr. 36 (emphasis added).)

To the extent Dr. Geha opined that "it would be difficult for [Plaintiff] to return to work" or that he "cannot engage in full-time work activity[,]" the ALJ did not need to accept these opinions because they were on issues reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d); SSR 96-5p. After a thorough review of the objective medical evidence and the record as a whole, the ALJ concluded that Dr. Geha's opinions were inconsistent with the overall medical evidence, including Dr. Geha's own notes, which showed, *inter alia*, that Plaintiff's impairments had improved with treatment and medication. (Tr. 26, 540, 543, 546, 549, 554, 557.) As such, the ALJ's assessment of Dr. Geha's opinions

15

is supported by substantial evidence. As Defendant points out, even if some of the evidence undermines the ALJ's findings, where the ALJ's decision is supported by substantial evidence, the Court is precluded from reweighing the evidence or substituting its own judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005); *Edwards*, 937 F.2d at 584 n.3. Based on the foregoing, the undersigned finds that the ALJ had good cause for giving only some weight to (or very little weight to some of) Dr. Geha's opinions.

### III. Conclusion

The Court does not make independent factual determinations, re-weigh the evidence, or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. Based on this standard of review, the undersigned concludes that the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act for the time period in question is due to be affirmed.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **AFFIRMED**.

2. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, on March 20, 2019.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record